**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda K. Green, | No. CV-07-1382-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff has filed a motion for summary judgment and Defendant has filed a cross-motion. Dkt. ##24, 29. For reasons stated below, the Court will grant the motions in part and deny them in part.

**I.     Background.**

Plaintiff applied for disability insurance benefits and supplemental security income on October 20, 2003, claiming disability as of October 12, 2003. Dkt. #25, Tr. 18, 164-65. The application was denied initially and on reconsideration. Tr. 109-113, 114-117. A hearing before an Administrative Law Judge ("ALJ") was held on November 2, 2005. Tr. 37. The ALJ issued a written decision on February 10, 2006, finding that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 93-96. The Appeals Council vacated the decision and remanded the case for further proceedings. Tr. 157-59. A second hearing before the ALJ was held on September 12, 2006. Tr. 70. The ALJ issued

a written decision on October 26, 2006, again finding that Plaintiff was not disabled. Tr. 15. This decision became Defendant's final decision when the Appeals Council denied review. Tr. 7. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Dkt. #1.

**II.     Standard of Review.**

Defendant's decision to deny benefits must be vacated "if it is not supported by substantial evidence or is based on legal error." *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Id.* In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citation omitted).

**III.    Analysis.**

Whether a claimant is disabled is determined using a five-step sequential evaluation process. The claimant bears the burden in steps one through four. To establish disability, the claimant must show (1) she is not currently working, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work. At step five, the Commissioner bears the burden of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found that Plaintiff had numerous impairments that are severe when considered in combination: status post injury to the neck, back, and left shoulder, left arm numbness, migraine headaches, lumbar and cervical degenerative disc disease, degenerative joint disease, moderate central stenosis at C6-7 with evidence of C8 radiculopathy, depression (not otherwise specified), an attention deficit disorder, a learning disorder with borderline intellectual functioning, an anxiety-related disorder with situation anxiety and stress, and a history of polysubstance abuse in remission since 1994. Tr. 21. The ALJ determined that these impairments were not severe enough to meet or equal a listed

impairment. *Id.* The ALJ concluded that Plaintiff was not disabled because she had the RFC to perform light unskilled work with restrictions. Tr. 22-25.

### A.     The Decision to Affirm or Vacate Defendant's Decision.

Plaintiff argues that Defendant's decision must be vacated because the ALJ erred at steps three, four, and five of the evaluation process. Dkt. #26 at 3-13. Plaintiff asserts that the ALJ incorrectly determined that Plaintiff's impairments do not meet or equal Listing 1.04(A). *Id.* at 3. Plaintiff also contends that in determining her RFC the ALJ did not perform the required function-by-function assessment and did not properly weigh subjective complaint testimony. *Id.* at 5. *Id.* at 4-13.[1] Plaintiff further argues that the ALJ improperly relied on a response by the vocational expert ("VE") to an incomplete hypothetical and failed to resolve the conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). *Id.* at 17.

#### 1.     Did the ALJ sufficiently explain his conclusion that Plaintiff's impairments do not equal Listing 1.04(A)?

Listing 1.04 impairments are those that result in the compromise of the nerve root or spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Such impairments include herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, and other similar impairment. *Id.* To meet Listing 1.04(A), the impairment(s) must manifest the following symptoms:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

*Id.* § 1.04(A).

In this case, the ALJ held that Plaintiff does not have impairments equal in severity to Listing 1.04(A) because the medical evidence does not establish the necessary criteria – specifically, there is no direct evidence of nerve root compression characterized by muscle

---

[1] Plaintiff also asserts that the ALJ did not properly weigh medical source opinion evidence at this step, but fails to provide further analysis.

- 3 -

1  weakness and other specific orthopedic limitations. Tr. 22. Plaintiff argues that the ALJ
2  erred because his conclusion is not supported by a comparison of the impairments to any
3  specific listing and because Plaintiff's nerve conduction study showing chronic C8
4  radiculopathy is evidence of nerve root compression sufficient to meet or equal Listing
5  1.04(A). Dkt. ##26 at 3-4, 33 at 2. Defendant asserts that because Plaintiff did not provide
6  direct evidence of nerve root compression characterized by neuro-anatomic distribution of
7  pain, the ALJ was not required to discuss the specific basis for finding that Listing 1.04(A)
8  had not been met. Dkt. #28 at 2-3. Defendant does not address Plaintiff's argument that the
9  nerve conduction study showing chronic C8 radiculopathy is sufficient evidence of nerve
10 root compression.

11 Radiculopathy is a disorder of the spinal nerve roots. *See* Stedman's Online Medical
12 Dictionary, http://www.stedmans.com/section.cfm/45. Cervical radiculopathy has been
13 defined as "the damage or disturbance of nerve function that results if one of the nerve roots
14 near the cervical vertebrae is compressed. Damage to nerve roots in the cervical area
15 can cause pain and the loss of sensation in various upper extremities, depending on
16 where the damaged roots are located." *See* WebMD, http://www.webmd.com/back-pain/
17 guide/pain-management-back-pain. Not only did Plaintiff's nerve conduction study reveal
18 evidence of chronic C8 radiculopathy (Tr. 415-16), the record shows evidence of decreased
19 range of motion in the cervical spine and neck (Tr. 339-40), decreased strength in left arm
20 and decreased sensation in left triceps, biceps, and leg (Tr. 242), and chronic neck pain
21 (Tr. 289-93, 297-98, 330-32, 338-42, 382-84). The ALJ does not address the evidence cited
22 by Plaintiff in Exhibits 17F through 22F (Tr. 380-416). Tr. 22. The ALJ simply states that
23 the evidence cited by Plaintiff does not establish the criteria in Listing 1.04 because "[t]here
24 is no direct evidence of nerve root compression characterized by muscle weakness and other
25 specific orthopedic limitations." *Id.* He fails to explain why the finding of chronic C8
26 radiculopathy does not constitute evidence of nerve root compression and why the nerve
27 conduction study, combined with the other evidence in the record described above, does not
28 show that Plaintiff's impairments equal Listing 1.04(A).

- 4 -

When determining at step three whether a claimant's impairments equal a listing, "the ALJ must adequately explain his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The mere statement that a claimant does not equal the listing is insufficient. *See id.* The ALJ's failure to provide sufficient explanation for concluding that Plaintiff's medical records do not equal the criteria of Listing 1.04(A) constitutes legal error. *See id.* (remanding for proper consideration of step three evidence).

### 2. Did the ALJ err in determining Plaintiff's RFC?

#### a. Plaintiff's physical limitations.

Plaintiff argues that the ALJ's RFC assessment is insufficient as a matter of law because the ALJ did not assess specific lifting, carrying, sitting, and standing requirements, nor did he provide a function-by-function assessment as to the number, length, and duration of position changes required by the sit/stand option. Dkt. #26 at 7. Defendant asserts that the ALJ did perform the required function-by-function assessment when the ALJ adopted the opinion of the State agency physician who provided a function-by-function assessment. Dkt. #28 at 4.

Where, as in this case, the claimant's impairments are credible and supported by the record, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[.]" SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "Only then may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy." *Williams v. Astrue*, No. 6:05-CV-1297 (NAM/GJD), 2008 WL 4518994, at *5 (N.D.N.Y. Sept. 30, 2008) (citing SSR 96-8p, at *1); *see Washnieski v. Astrue*, No. 07-CV-598, 2008 WL 3981987, at *6 (E.D. Wis. Aug. 22, 2008) ("Under SSR 96-8p, the ALJ must find the claimant's functional limitations on a function-by-function basis *before* determining the RFC.") (emphasis in original). This sequential evaluation process is important because "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the [ALJ]

- 5 -

1  overlooking some of an individual's limitations or restrictions." SSR 96-8p, at *4.

2  Although Defendant contends that the ALJ adopted the opinion of the State agency 3 physician with regard to Plaintiff's functional capacity to lift, stand, climb, balance, stoop, 4 kneel, crouch and crawl (Dkt. #28 at 3-4), there is no mention of this in the ALJ's decision. 5 *See* Tr. 22.  Because the ALJ does not even mention the function-by-function assessment of 6 Plaintiff's physical abilities completed by the State agency physician (Ex. 14F, Tr. 322-29), 7 and does not provide a function-by-function assessment in the decision, the ALJ committed 8 legal error.  *See Jones v. Barnhart*, 372 F. Supp. 2d 898, 1005 (S.D. Tex. 2005) (remanding 9 case where the "ALJ failed to make the function by function RFC findings as directed by 10 SSR 96-8"); *Washnieski*, 2008 WL 3931987, at *6 (remanding for an adequate function-by-11 function assessment of the claimant's physical abilities); *see also Connett v. Barnhart*, 340 12 F.3d 871, 874 (9th Cir. 2003) (stating that the district court may not affirm the ALJ's 13 decision based on evidence the ALJ did not discuss).

14  Defendant contends that the ALJ's RFC determination is supported by substantial 15 evidence because the ALJ referenced a functional capacity evaluation prepared by Dr. John 16 Charochak.  Dkt. #28 at 4.  The ALJ recited the "final impairment rating of 8% cervical, 0% 17 thoracic, and 10% lumbar" (citing Ex. 20F, Tr. 396-402), and concluded that "the results of 18 this evaluation and the diagnostic testing do not support a finding of 'disability' under the 19 regulations."  Tr. 23.  The mere consideration of a "final impairment rating" coupled with 20 the ultimate conclusion that the rating does not support a finding of disability is no substitute 21 for the function-by-function analysis required by SSR 96-8p.

22  Defendant cites *Bayliss* for the proposition that the ALJ provided a sufficient function-23 by-function assessment when posing a hypothetical question to the VE.  Dkt. #28 at 4.  24 Defendant's reliance on *Bayliss* is misplaced.  The hypothetical posed to the VE in *Bayliss* 25 "contained all of the limitations that the ALJ found credible and supported by substantial 26 evidence[.]"  427 F.3d at 1217.  The limitations contained in the hypothetical posed in this 27 case were those included in the definition of light work, not ones the ALJ found  following 28 a function-by-function assessment of Plaintiff's impairments.  *See* Tr. 86-87.

### b.   **Plaintiff's mental limitations.**

Plaintiff contends that the ALJ's conclusion that Plaintiff can perform light, unskilled work with simple reading and writing fails to take her significant psychological limitations into consideration. Dkt. #26 at 7-8. The regulations require the ALJ to "consider all of [the claimant's] medically determinable impairments" including her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 1404.1545(a)(2),(4), 416.945(a)(2), (4). The regulations further specify that certain mental impairments "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting" may reduce the claimant's ability to do past work and other work. 20 C.F.R. §§ 1404.1545(c), 416.945(c).

The ALJ found that Plaintiff has attention deficit disorder, a learning disorder with borderline intellectual functioning, an anxiety-related disorder with situation anxiety and stress. Tr. 21. Although the ALJ found that these mental impairments do not establish the presence of C criteria, he found that they resulted in the following functional limitations: "(1) mild restriction in her activities of daily living; (2) mild difficulties in maintaining social functioning; [and] (3) moderate difficulties in maintaining concentration, persistence or pace[.]" Tr. 21-22.

In his decision, the ALJ cites with approval a report prepared by psychologist Jane George. Tr. 22; *see* Tr. 304-21. The ALJ accepts Dr. George's findings that Plaintiff is able to understand less complex tasks and simple instructions and is able to maintain attendance and productivity. Although not expressly repeated in the decision, Dr. George's report adopted by the ALJ also finds, among other things, that Plaintiff is able to get along with coworkers and maintain socially appropriate behavior, can sustain an ordinary routine without special supervision, and is capable of completing a normal workweek without interruption from psychologically based symptoms. Tr. 304-05. Although the ALJ did not explicitly recite Dr. George's report verbatim, he did cite to important findings and clearly considered the report with approval when finding that Plaintiff's mental impairments only

- 7 -

1 restrict her to positions with simple reading and writing. *See* Tr. 22. Substantial evidence
2 supports the ALJ's RFC determination with respect to Plaintiff's mental impairments.

### 3. Did the ALJ err in considering subjective complaint testimony?

Plaintiff argues that since the ALJ does not allege exaggeration or malingering, the ALJ cannot reject Plaintiff's testimony about the severity of symptoms unless he first makes a finding of clear and convincing reasons for doing so. Dkt. #26 at 9-11. Defendant asserts that the ALJ did give specific, clear, and convincing reasons to reject Plaintiff's subjective complaint testimony. Dkt. #28 at 7. Defendant notes that the ALJ found that Plaintiff elected not to have neck surgery and failed to seek treatment for her emotional problems. *Id.* at 7-8. Defendant also contends that the ALJ properly relied upon a State agency consultant's testimony when determining that the medical evidence of record did not support the severity nor the extent of the limitations claimed by Plaintiff. *Id.* at 8. Finally, Defendant argues that the ALJ properly found that Plaintiff's pain was controlled by medication and that Plaintiff's alleged side effects were not substantiated by the record. *Id.* at 9.

The ALJ found Plaintiff's testimony concerning the severity of her limitations "not entirely credible" (Tr. 22), but his decision on this point is less than a model of clarity. The ALJ did not organize his discussion of Plaintiff's testimony using the two-step analysis established by the Ninth Circuit: First, the ALJ must apply the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), and determine whether the Plaintiff produced objective medical evidence of an underlying impairment which could reasonably produce the pain or other symptoms alleged. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Second, if Plaintiff produces evidence to meet the *Cotton* test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* Had the ALJ followed this simple organization, review of the reasons for his decision would have been much easier.

Having read and re-read the decision, it appears to the Court that the ALJ provided ten reasons for finding Plaintiff's testimony not fully credible: (1) Plaintiff has less activity and, consequently, less pain and headaches after having moved in with her daughter, (2) she

- 8 -

1  elected not to have neck surgery, (3) she is not receiving any mental health treatment,
2  (4) Dr. George's June 2004 report indicates that Plaintiff is able to understand less complex
3  tasks and simple instructions and is able to maintain attendance and productivity, (5) a report
4  by Dr. Daniel Watkins dated April 16, 2004 indicates that Plaintiff's GAF score was 60 and
5  her depression is adequately controlled with medication, (6) Plaintiff's back pain has been
6  partially managed with pain medication, (7) a September 16, 2005 MRI revealed
7  degenerative disc disease with moderate central stenosis, but no fracture or subluxation, mild
8  narrowing at C5-6 and mild to moderate narrowing at C6-7 with marginal spurring, (8) a
9  November 2005 Functional Capacities Evaluation by Dr. Charochak had a final impairment
10 rating of 8% cervical, 0% thoracic, and 10% lumbar, (9) the overall evidence does not
11 support Plaintiff's allegation of headaches for much of the adjudicatory period, and (10) the
12 record does not establish evidence of Plaintiff's alleged side effects of medication. Tr. 22-23.

13        Several of the reasons provided by the ALJ are not valid reasons for discounting
14 credibility. The ALJ may not discredit Plaintiff's testimony because she declined to undergo
15 a risky neck surgery with only a 50% chance of success and which could cause her
16 significant harm. *See* Tr. 50, 83; 20 C.F.R. § 404.1530(c)(4). Also, the ALJ may not
17 discredit Plaintiff's testimony because she is not currently receiving mental health treatment.
18 This Circuit has explicitly "criticized the use of lack of treatment to reject mental complaints
19 both because mental illness in notoriously underreported and because it is a questionable
20 practice to chastise one with a mental impairment for the exercise of poor judgment in
21 seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-
22 1300 (9th Cir. 1999) (citations omitted). Furthermore, the ALJ does not specify during what
23 time period there is a lack of evidence of headaches. Contrary to the ALJ's contention, there
24 are many references in the record to Plaintiff's headaches. Although many of the doctor's
25 notes are illegible, the record plainly shows that Plaintiff complained of severe headaches on
26 November 3, 2003 (Tr. 241), May 20, 2004 (Tr. 287), August 7, 2004 (Tr. 383), April 3,
27 2005 (Tr. 298), and November 1, 2005 (Tr. 397).

28        The Court concludes that the ALJ erred in relying on several invalid reasons for

- 9 -

discounting Plaintiff's credibility. Because the ALJ's decision must be vacated in light his errors at steps 3 and 4 of the evaluation process, the Court will not engage in a harmless error analysis with respect to the ALJ's credibility determination. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### B. The Decision to Remand for Further Proceedings or an Award of Benefits.

Having considered the record as a whole, the Court concludes that the ALJ's decision should be vacated because it is not supported by substantial evidence and is based on legal error. *See Robbins*, 466 F.3d at 882.[2] This Circuit has held that an action should be remanded for an award of benefits where there are no outstanding issues that must be resolved before a determination of disability can be made and it is clear from the record that the claimant is disabled under the Social Security Act. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Having considered the record in this case as a whole, the Court concludes that it does not clearly show that Plaintiff is disabled. The Court further concludes the ALJ must evaluate whether Plaintiff's impairments equal or meet Listing 1.04A and redetermine Plaintiff's RFC before a finding of disability can be made. A remand for further proceedings is therefore appropriate.

Plaintiff asserts that the case should be remanded for an award of benefits because the ALJ failed to properly weigh Plaintiff's subjective complaint testimony as well as other medical evidence and, therefore, the evidence is accepted as true, establishing disability.

---

[2] Plaintiff also argues that the vocational evidence is insufficient to support a denial of benefits because the ALJ failed to include Plaintiff's restrictions of moderate difficulties in maintaining concentration, persistence, or pace and mild difficulties performing activities of daily living and maintaining social function. Dkt. #26 at 15-16. Plaintiff further argues that the ALJ erred because the vocational consultant's testimony was in conflict with the DOT and the ALJ failed to resolve the conflict. *Id.* at 16-17. Because the Court has vacated the ALJ's RFC determination, there is no need to address these concerns at this time.

1  Dkt. #26 at 13; Dkt. #33 at 16-17.³  Although the overwhelming authority in this Circuit
2  makes clear that the "credit as true" doctrine is mandatory, the doctrine does not apply to this
3  particular case.⁴  The "credit as true" doctrine applies "when an ALJ fails to provide legally
4  sufficient reasons for disregarding a claimant's excess pain testimony." *Rodriguez v. Bowen*,
5  876 F.2d 759, 763 & n.11 (9th Cir. 1989).   It is not clear to the Court from the record that
6  the ALJ failed to provide legally sufficient reasons for determining that Plaintiff lacked
7  credibility; rather the Court is unable to ascertain whether the ALJ would still find Plaintiff
8  not credible without relying on the improper reasons addressed by the Court.

9  In summary, Plaintiff's motion for summary judgment is granted with respect to error
10 in the ALJ's disability determination, but denied to the extent it seeks a remand for an award
11 of benefits.  Defendant's cross-motion for summary judgment is denied.

12 **IT IS ORDERED:**

13 1.  The motions for summary judgment (Dkt. ##24, 29) are **granted in part** and
14     **denied in part** as set fort in this order.
15 2.  Defendant's administrative decision denying benefits is **vacated**.
16 3.  The case is **remanded** to Defendant for further proceedings consistent with
17     this order.

---

³Defendant argues only that the ALJ's decision should be affirmed and does not address whether the Court should remand for further proceedings or for an award of benefits.

⁴*See Varney v. Sec. of HHS*, 859 F.2d 1396,  (9th Cir. 1988); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Rodriguez v. Bowen*, 876 F.2d 759, 763 & n.11 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 926 (9th Cir. 2002); *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Benecke v. Barnhart*, 379 F.3d 587, 593-95 (9th Cir. 2004); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007).

4. The Clerk is directed to **terminate** this action.

DATED this 6th day of February, 2009.

*David G. Campbell*
United States District Judge

- 12 -